## FORD MOTOR CREDIT COMPANY v. HAZEL FRANKLIN JORDAN

### No. 6921SC250

#### (Filed 2 July 1969)

**1. Courts § 21—— conflict of laws —— sale of car in another state**

Where all the evidence shows that the sale and delivery of the automobile in suit took place in Tennessee, the conditional sales contract covering the purchase of the automobile should be governed by the laws of Tennessee unless contrary to the public policy of this State.

**2. Contracts § 18—— modification of written contract**

A written contract may be modified by a subsequent parol agreement, even though the contract provides that it constitutes the entire agreement between the parties and that no modification of the terms therein shall be valid.

**3. Contracts § 18—— modification of contract —— burden of proof**

The burden of proving the subsequent modification to a written contract rests upon the person asserting the modification.

**4. Contracts § 18—— modification of contract —— proof**

Evidence of an oral agreement which modifies a written contract should be clear and convincing.

**5. Chattel Mortgages § 16; Contracts § 26—— exclusion of evidence —— modification of contract**

In finance company's action to recover possession of an automobile under a conditional sales contract providing for payments on the seventh day of each month, defendant purchaser was not prejudiced by the exclusion of his testimony, ordinarily admissible, that an official of the company told him he could make payments by the fifteenth day of each month, where the evidence, if allowed, would not be sufficient to be submitted to the jury on issue of modification of contract.

**6. Chattel Mortgages § 16; Contracts § 18—— waiver of contract —— acceptance of late payments**

In finance company's action to recover possession of an automobile under a conditional sales contract, the fact that the company consistently accepted late payments and levied late charges *is held* insufficient, standing alone, to constitute waiver by the company of a contract provision providing for payments on the seventh day of each month.

**7. Contracts § 18—— modification of contract —— effect of ambiguous dealings**

Modification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed.

APPEAL by defendant from *Armstrong, J.,* 8 July 1968 Civil Session, Superior Court of FORSYTH.

Plaintiff instituted this action on 10 October 1967 to recover possession of a 1967 Mercury station wagon. Plaintiff alleges that on 23 November 1966 the defendant purchased the station wagon from O'Neil Linc-Merc, Inc. of Knoxville, Tennessee, the seller retaining a security interest in the vehicle for the purpose of securing the obligation of the purchaser. At the time this contract was entered into, defendant was residing in Knoxville, Tennessee. It is alleged that the security agreement executed by the defendant was assigned to the plaintiff; that the defendant has defaulted in the payment of his obligation under this agreement; that by reason of this default plaintiff is entitled to the possession of the vehicle; and that plaintiff has demanded that defendant return this vehicle, but that such demand has been refused. On 10 October 1967 an order in claim and delivery was entered by the Clerk of Superior Court of Forsyth County on behalf of the plaintiff.

Defendant answered the plaintiff's complaint, denying that he defaulted in payment under the security agreement, and as a further answer and defense the defendant alleged that subsequent to the execution of the security agreement, he was given until the fifteenth of each month to make the installment payments; that because of this extension he was not in default at the time of the institution of this action and the seizure of his automobile; and that plaintiff's actions constitute a rescission of the agreement entitling defendant to recover all payments made to plaintiff under the said agreement.

The contract entered into between defendant and O'Neil Linc-Merc, Inc., on 23 November 1966 provides for thirty-six monthly payments in the amount of $100.84, the first payment was due on 7 January 1967 and a like payment was due on the 7th day of each succeeding month. The following provisions of the contract are pertinent to the decision of this case:

"3. . . . Purchaser shall not use the property illegally, improperly or for hire (unless stated herein) and shall not without the written permission of Seller, remove the Property from the county of his residence or transfer or otherwise dispose of any interest in this contract or the Property.

7. Time is of the essence of this contract. In the event Purchaser defaults in any payment, or fails to obtain or maintain the insurance required hereunder, or fails to comply with any of the terms and conditions hereof, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or

against Purchaser or his property, or Seller deems the Property in danger of misuse or confiscation, or Seller otherwise reasonably deems the indebtedness or the Property insecure, Seller shall have the right, at its election to declare the unpaid portion of the Deferred (time) Balance, together with any other amount for which Purchaser shall have become obligated hereunder, to be immediately due and payable. Further in any such event, Seller, its agents or representatives, may take immediate possession of the Property, including any equipment or accessories, and for this purpose Seller, its agents or representatives, may enter upon the premises where the Property may be and remove same, . . .

8. This contract constitutes the entire agreement between Purchaser and Seller and no modification of any of the terms and conditions herein shall be valid in any event, and Purchaser expressly waives the right to rely thereon, unless made in writing duly executed by Seller. Any provision of this contract prohibited by the law of any state, shall as to such state be ineffective to the extent of such prohibition without invalidating the remaining provisions of this contract. This contract shall be governed by the law of the state in which the Original Seller is located as shown on the face of this contract."

The parties stipulated that payments were made by the defendant as follows:

| (Due Date) | Payment No. | Date of Check Or Money Order | Company's Record Payment Date |
|---|---|---|---|
| (Jan. 7) | 1 | January 9 | January 12 |
| (Feb. 7) | 2 | February 13 | February 16 |
| (Mar. 7) | 3 | April 6 | April 11 |
| (Apr. 7) | 4 | May 6 | May 8 |
| (May 7) | 5 | May 20 | May 22 |
| (June 7) | 6 | July 26* | July 27 |
| (July 7) | 7 | July 26 | July 27 |
| (Aug. 7) | 8 | September 28 | October 6 |
| (Sept. 7) | 9 | October 2 | October 10 |

* Plus $10 late charge.

The evidence tends to show that the plaintiff accepted the June 1967 payment and the July 1967 payment from the defendant on 26 July 1967. On 22 August 1967, 29 August 1967, 7 September 1967, and 14 September 1967 the plaintiff wrote the defendant from its office in Knoxville, Tennessee, concerning past due payments. At this time the defendant was residing in Winston-Salem, North Car-

olina. On 25 September 1967 Givan Hutchinson, collection supervisor for the plaintiff in Knoxville, Tennessee, assigned the account to the plaintiff's office in Greensboro, North Carolina, to repossess the automobile. On 28 September 1967, Charles William Glass, an employee of the plaintiff, contacted the defendant and told him that his instructions were to repossess the automobile. Defendant advised Glass that he would have to get the sheriff if he wanted possession of the automobile. On 6 October 1967, the payment allegedly due on 7 August 1967 was recorded by the plaintiff at its Knoxville office as being paid. This payment was made by money order dated 28 September 1967. On 10 October 1967 (the same date this action was begun) the payment allegedly due on 7 September 1967 was recorded by the plaintiff at its Knoxville office as being paid. This payment was made by money order dated 2 October 1967.

At the close of the evidence the trial judge nonsuited the defendant's counterclaim, and a peremptory instruction was given in favor of the plaintiff. From a judgment in favor of the plaintiff the defendant appealed.

*Womble, Carlyle, Sandridge & Rice by W. P. Sandridge, Jr., for plaintiff appellee.*

*Hatfield, Allman & Hall and Hayes, Hayes & Sparrow by W. Warren Sparrow for defendant appellant.*

MORRIS, J.

Defendant argues that the trial judge erroneously excluded evidence which would have tended to show that the plaintiff had extended the time for payment under the installment contract to the fifteenth of each month.

[1]   All the evidence shows that the sale and delivery of this automobile took place in Tennessee. The contract in question should be governed by the laws of Tennessee unless contrary to the public policy of this State. *Motor Co. v. Wood*, 237 N.C. 318, 75 S.E. 2d 312; *Roomy v. Insurance Co.*, 256 N.C. 318, 123 S.E. 2d 817. This is in accordance with the agreement of the parties.

[2]   The contract entered into by the defendant contains the following language: "This contract constitutes the entire agreement between Purchaser and Seller and no modification of any of the terms and conditions herein shall be valid in any event, and Purchaser expressly waives the right to rely thereon, unless made in writing duly executed by Seller." It is clear that under Tennessee law a written

contract may be modified by a parol agreement after it is made. See *Co-Operative Stores Co. v. United States Fidelity & G. Co.,* 137 Tenn. 609, 195 S.W. 177, where the Tennessee Supreme Court stated:

"A written contract may be changed by parol, and this although it stipulate that it shall only be changed in writing, for the obvious reason that men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into. . . . A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it." (citations omitted.)

This same rule prevails in North Carolina. "The exclusion of parol evidence on the theory that it is inadmissible to amend, vary or contradict a written instrument has no application to subsequent agreements which change or modify the original contract." *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 32 S.E. 2d 34.

[3-5] The only testimony in this record concerning a subsequent agreement to change the date for making payments was elicited from the defendant out of the presence of the jury. Defendant stated that an official of Ford Motor Credit Company told him that he could make payments by the fifteenth of each month. Although the above evidence was admissible under the rule that a written contract may be changed by a subsequent oral agreement, we do not think its exclusion was prejudicial. Under Tennessee and North Carolina law the defendant had the burden of proving the subsequent modification to the written contract. *Balderacchi v. Ruth,* 36 Tenn. App. 421, 256 S.W. 2d 390; *Russell v. Hardwood Co.,* 200 N.C. 210, 156 S.E. 492. Evidence of an oral agreement which modifies a written contract should be clear and convincing. *Wertheimer v. Byrd,* 278 Minn. 150, 153 N.W. 2d 252. We do not think the statement that "[an official of Ford Motor Credit Company] said that it would be acceptible (sic) to make my payment between the 10th and 15th of each month — until the 15th of each month" satisfies this requirement. The evidence, if allowed, would not be sufficient for submission to the jury.

[6, 7] Defendant next argues that the plaintiff should not have been allowed to repossess the automobile because late payments were consistently accepted, late charges levied, and that he had not been notified that it was necessary to make payments on the due date specified in the contract. We need not decide whether under certain

situations a creditor may waive the right to receive payments at the time specified in the installment contract. We need only say that under the facts now before us, we do not think such a waiver has been shown. Notices mailed to the defendant during August and September of 1967 state that the installments were due on the seventh of each month. This is inconsistent with defendant's argument that he had not been notified that it was necessary to make payments on the date specified. "[M]odification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed." *Balderacchi v. Ruth, supra*. This rule applied to the present case leads to a result which is in accord with sound policy. Should the rule be that the mere acceptance of late payments waives the right to receive subsequent payments on time, financial institutions would have to take the position that it would never be prudent to accept late payments. Flexibility would be severely hampered. This is not to say that acceptance of late payments along with evidence of unconscionable or improper actions on the part of a financial institution would not constitute a waiver. Such a situation is not before us. Moreover, the contract in the present case provides that "Waiver by Seller of any default shall not be deemed a waiver of any other default." We do not agree that plaintiff has waived the right to demand that payments be made according to the provisions of the contract.

Evidence offered by plaintiff and defendant shows that the defendant violated other provisions of this agreement by bringing the automobile to North Carolina without written permission from the plaintiff, and by declaring bankruptcy. Since these actions were not relied on by the plaintiff as grounds for the repossession of the automobile, we do not discuss them. The undisputed evidence shows that the October 1967 payment has never been made by the defendant.

The judgment below is

Affirmed.

CAMPBELL and BROCK, JJ., concur.