ANTHONY TILE AND MARBLE COMPANY, INC. v. H. L. COBLE CONSTRUCTION COMPANY, AND HOWARD F. SHARPE, TRADING AS SHARPE & COMPANY

No. 7226SC768

(Filed 20 December 1972)

**1. Contracts § 18— modification of contract**

Parties to a contract may, by mutual consent, agree to change its terms, but to be effective as a modification, the subsequent agreement must possess all the elements necessary to form a contract.

**2. Contracts § 18— modification of contract — burden of proof**

Where plaintiff admitted in its complaint that it failed to procure a performance bond within the time required by the original contract between the parties, it had the burden of proving a modification of the contract extending the time for procuring the bond by clear and convincing evidence.

**3. Contracts § 18— modification of contract — failure of consideration**

Alleged modification of an executory contract extending the time within which plaintiff could furnish a performance bond was unsupported by consideration and was therefore unenforceable.

**4. Contracts § 4— consideration — act promisor is already obligated to perform**

A promise to perform an act which the promisor is already bound to perform is insufficient consideration for a promise by the adverse party.

APPEAL by defendant H. L. Coble Construction Company from *Friday, Judge,* 17 April 1972 Schedule "A" Civil Session of MECKLENBURG Superior Court.

Civil action by plaintiff to recover damages for breach of contract. Plaintiff alleged in its complaint that on or about 27 August 1969, plaintiff and defendant H. L. Coble Construction Company (Coble) entered into an express executory contract under the terms of which plaintiff agreed to supply and install tile for a low rent housing project of which Coble was the prime contractor at an agreed price of $74,000. Plaintiff further alleged that it dutifully performed the conditions precedent to said agreement except the procurement of a performance bond, and that Coble through its agent, A. D. Shackelford, expressly informed plaintiff on 4 November 1969, that it could have additional time within which to provide the performance bond which was actually delivered to Coble on 6 November 1969. It was also alleged that Coble failed and neglected to perform

its contract with plaintiff corporation and contracted with another party for the supply and installation of the tile in the low rent housing project.

As to defendant Sharpe, plaintiff alleged that Sharpe failed to procure the performance bond on time in derogation of their contract thereby forcing plaintiff to obtain a bond through another party which was delivered to and refused by Coble on 6 November 1969; and that Sharpe's failure to procure the bond was the sole and proximate cause of plaintiff losing its contract with Coble. At trial, the court granted defendant Sharpe's motion for directed verdict at the close of plaintiff's evidence and defendant Sharpe is not involved in this appeal.

Defendant Coble's motion for a directed verdict at the close of plaintiff's evidence was overruled as was his renewal of that motion after electing not to present any evidence.

The case was submitted to the jury which found the following: That plaintiff and defendant Coble entered into a contract on 28 August 1969 which required plaintiff to furnish a performance and materials payment bond within 10 days; that plaintiff and defendant Coble thereafter modified and extended the 10-day requirement; and that defendant Coble willfully failed to abide by the terms and conditions of the modification and extension of the 10-day requirement. From a judgment awarding plaintiff $7,000 in damages, defendant Coble appealed.

*Paul L. Whitfield for plaintiff appellee.*

*Warren C. Stack for defendant appellant.*

MORRIS, Judge.

Defendant Coble assigns as error the trial court's failure to grant his motions for directed verdict and asserts among his contentions that there was insufficient consideration to support any modification extending the time required to secure a performance and materials payment bond under the agreement of 28 August 1969.

[1] Parties to a contract may by mutual consent agree to change its terms and a written contract may ordinarily be modified by a subsequent parol agreement and such subsequent agreement may be either express or implied by conduct of the parties. But to be effective as a modification, the subsequent

agreement, whatever its form and however evidenced must possess all the elements necessary to form a contract. *Electro Lift v. Equipment Co.,* 4 N.C. App. 203, 166 S.E. 2d 454 (1969), cert. denied 275 N.C. 340 (1969).

[2] Since plaintiff admits in its complaint that it failed to procure the bond within the 10 days required by the original agreement, it has the burden of proving the subsequent modification allegedly extending the period in which to procure the required bond. *Russell v. Hardwood Co.,* 200 N.C. 210, 156 S.E. 492 (1931).

Furthermore, evidence of an oral agreement that modifies a written contract should be clear and convincing. *Credit Co. v. Jordan,* 5 N.C. App. 249, 168 S.E. 2d 229 (1969) ; see also Annot., 94 A.L.R. 1278, at p. 1280 (1935).

Charles Marus, President of plaintiff company, offered testimony that in substance tends to show the following:

Under the agreement of 28 August 1969, subcontract No. 4045, plaintiff company was to execute and return five copies of subcontract No. 4045 to Coble within 10 days as well as obtain a performance and materials bond within the same period and deliver it to defendant. The five executed copies of the subcontract were sent to defendant on 23 September 1969.

Starting about the first of October 1968, Marus had several conversations with A. D. Shackelford, Vice-President of defendant Coble, and informed him that plaintiff was using the services of Mr. Howard Sharpe to obtain the bond. Shackelford stated to him that he knew Sharpe and felt he was a little slow in handling affairs but he did not object to defendant using him to procure the bond. On Friday, 31 October 1969, he received a telephone call from Mr. Shackelford informing him that he would have to have the bond by Monday, 3 November 1969. Marus advised Shackelford that it would be impossible to get any action over the weekend and made arrangements that same day to procure bond through another source. Later that same day he telephoned Shackelford and told him that the bond would be forthcoming the first of the week and that Shackelford's response was that, "that was good, just get it to me." On 3 November 1969 Marus received a telephone call from Shackelford asking why he had not received the bond to which Marus replied that it was on the way and would be delivered not later than 6 November 1969. In the same conversation

Shackelford advised him "to hurry up and get the bond." That same day, 3 November 1969, Marus received a telegram from Coble demanding the bond by 9:30 a.m. the next day or their negotiations would be null and void. On 4 November 1969, Marus received another telegram from Coble stating that it had not received the bond as of 9:30 a.m. and that all negotiations were hereby declared null and void. Marus then testified that he delivered the bond on 6 November 1969. On 7 November 1969, Marus received a letter from Mr. Shackelford reconfirming the telegram of 4 November declaring the negotiations at an end.

A. D. Shackelford was called as a witness by plaintiff and testified that on 31 October 1969 he telephoned Charles Marus and informed him that they had been talking about the bond for about two months and since the project had reached the critical stage, some action had to be taken. He further testified that he told Marus that if the bond was not in his office by 10:00 a.m., Monday, 3 November 1969, he would contract with someone else to do the tile work. He further stated that on 3 November 1969 defendant company sent plaintiff a telegram demanding the bond by 9:30 a.m. the next day and when no bond was forthcoming, a telegram was sent to plaintiff on 4 November declaring all negotiations between the parties null and void. Shackelford then stated that Coble entered into a contract with another company who completed the tile work involved in the project.

As stated above, to be effective as a modification, a new agreement must possess all elements necessary to form a contract. Certainly, consideration is as much a requisite in effecting a contractual modification as it is in the initial creation of a contract.

Plaintiff contends that since the 28 August agreement was still executory with obligations remaining to be performed on both sides, no additional consideration was required for any modification. We do not agree.

As to executory contracts, it is generally held that "[A] modification can be nothing but a new contract and must be supported by a consideration like every other contract." 17 Am. Jur. 2d, Contracts, § 469, p. 939. Accord. 6 Corbin on Contracts, §§ 1293-1294. See also 39 Cor. L.Q. 114 (1953) and 52 Mich. L.Rev. 909 (1954).

In support of its position plaintiff cites the following in its brief:

> "Any executory contract which is bilateral in the advantage and obligations given and assumed may at any time after it has been made and before a breach thereof has occurred be changed or modified in one or more of its details by a new agreement also bilateral by the mutual consent of the parties without any other consideration. 17 Am. Jur. 2d, Contracts, § 469, p. 941."

[3, 4]   While we agree with the basic soundness of the above principle as to the requisite sufficiency of consideration needed to support a modification, plaintiff has failed to show any modification that is indeed bilateral. Under the alleged modification, plaintiff incurred no new obligations or duties. No detriment was to be suffered by plaintiff nor new benefit to be received by defendant. Assuming mutual consent of the parties to the modification, only the time period in which to procure the bond was changed. Plaintiff simply promised to perform what it was obligated to do under the 28 August agreement. It is generally established that a promise to perform an act which the promisor is already bound to perform is insufficient consideration for a promise by the adverse party. *Sinclair v. Travis,* 231 N.C. 345, 57 S.E. 2d 394 (1950). 1 Williston on Contracts, 3d Ed., § 130.

For the reasons expressed above, we feel that the alleged modification was unsupported by a sufficient consideration and that the trial court erred in failing to grant defendant Coble's motion for directed verdict.

Reversed.

Judges CAMPBELL and PARKER concur.