## IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

Filed
September 15, 1999

| | |
|---|---|
| MICHAEL PHILLIPS, | ) C/A NO. 03A01-9901-CH-00030 |
| | ) |
| Plaintiff-Appellant, | ) UNICOI CHANCERY |
| | ) |
| v. | ) HON. THOMAS J. SEELEY, JR., |
| | ) CHANCELLOR |
| MORRILL ELECTRIC, INC., | ) |
| | ) VACATED AND |
| Defendant-Appellee. | ) REMANDED |

TONY SEATON and LEE HERRIN, LAW OFFICES OF TONY SEATON, Johnson City, for Plaintiff-Appellant.

WILLIAM C. BOVENDER and STEPHEN M. DARDEN, HUNTER, SMITH & DAVIS, LLP, Johnson City, for Defendant-Appellee.

## O P I N I O N

Franks, J.

In this action for breach of employment contract, the defendant-employer was granted summary judgment by the Trial Court, and plaintiff-employee has appealed.

On November 10, 1994, plaintiff-employee and defendant-employer entered into an employment agreement providing that plaintiff was to be employed for a term of five years as a Special Assistant to the President of the company. The agreement contained a clause regarding termination that stated:

> 5. Termination for Cause: For good and sufficient cause, Employer may terminate this Agreement at any time upon giving written

notice to Employee specifying the reasons for such termination.  The following specific grounds, while not exclusive, shall constitute sufficient reasons for termination of this Agreement for cause:

A.  If the Employee shall engage in any conduct or activity which would be a material breach of his obligations under this Agreement; or

B.  If the Employee shall be convicted of any offense or crime punishable as a felony or otherwise involving moral turpitude; or

C.  If Employee shall engage in any act or conduct which would be a violation of any rule, law or regulation relating to the conduct of Employer's business and which would subject Employer to civil or criminal liabilities.

Defendant's President,Giles Morrill, died unexpectedly on May 22, 1997.  Vice President, William E. "Bud" King, assumed the role of President of the company and King began to restructure the company, and eliminated several positions, including that of Special Assistant to the President.  He stated that in his new "organizational chart" there was no place for an Assistant to the President, regardless of who had worked in that capacity.  He reassigned plaintiff to a production job at the company's Rocky Fork facility.

After the death of Morrill, his widow and daughter approached Paul Farnor and asked him to become a member of the Board of Directors.  Mr. Farnor was elected to Chairman of the Board in June of 1997, and between July 18, 1997, and August 18, 1997, Farnor evaluated the plaintiff's performance.  He reviewed the documents in plaintiff's personnel file and interviewed co-workers as to plaintiff's job performance.  Farnor concluded that plaintiff was making no contribution to the company.

On August 18, 1997, Farnor met with Phillips and asked Phillips to leave the company "quietly" with six months benefits and pay.  He told plaintiff that he had not been contributing to the company, and that he "had been moved around," and that his peers were giving negative feedback about him.  Farnor gave plaintiff a copy of the notes from that meeting.  On September 8, 1997, Farnor gave Phillips a

"separation notice." This notice stated that Phillips was discharged for cause "because he engaged in conduct and activities which are a material breach of his obligations under his employment agreement." Plaintiff then brought this action, alleging that he had been wrongfully terminated in violation of his employment contract, and that he did not receive adequate notice of termination in accordance with the employment agreement, which also constituted a breach of the agreement. This appeal ensued, following the Trial Court's grant of summary judgment to defendant.

In evaluating a motion for summary judgment, a trial court should consider "(1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for a trial." *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). When reviewing the action of the Trial Court, this Court must view the evidence in the light most favorable to the opponent of the motion, and all legitimate conclusions of fact must be drawn in favor of the opponent. *Gray v. Amos*, 869 S.W.2d 925 (Tenn. App. 1993).

In an action for wrongful discharge in breach of contract, the burden is on the plaintiff to prove all facts essential to his cause of action. The employee establishes a *prima facie* case by proving the contract, his performance thereof up to the time of his discharge, and the damage resulting from the discharge that is in breach of the contract. 30 C.J.S. Employer-Employee Relationship §89(a) (1992). Where the contract requires good cause for a discharge, the employer has the burden of proving such good cause. *Id*. At §89(b).

It is plaintiff's position that he was discharged due to the restructuring of the company, and therefore was not discharged for cause as required under the Employment Agreement, and further that the defendant further breached the Agreement by not giving plaintiff adequate notice of his termination and the reasons.

Plaintiff was hired to the specific position of "Special Assistant to the

3

President" with such duties and responsibilities as assigned to him by the President or Board of Directors. The Employment Agreement states that initial duties will include assistance in the establishment and codification of corporate policies and procedures, and also to formulate and provide implementation for enhancement of manufacturing productivity. It was further agreed that future assignments would include duties and responsibilities commensurate with a senior management position for employer. The term of employment would continue through November 27, 1999.

When King took over the role of President following the death of Morrill, he vacated plaintiff from his position and reassigned him to a production job, which plaintiff described as work on the production line and "helping with department assessments and review, which was essentially process engineering or plant engineering kind of work." He also stated that by the time he left work with defendant, his position "had been reduced five levels." Neither his pay nor benefits was cut with the change of positions.

When an employee is hired to fill a particular position, any material demotion or change of duties constitutes a breach of the contract, unless the contract contemplates a change in rank and nature of job. 30 C.J.S. Employer-Employee Relationship § 52 (1992); David J. Oliveiri, Annotation, *Reduction in Rank or Authority or Change of Duties as Breach of Employment Contract*, 63 A.L.R.3d 539 (1975). *Also see Smith v. American General Corporation, NLT*, 1987 WL 15144 (Tenn.App. 1987).

In *Moore Coal Co. v. Brown*, 64 S.W.2d 3 (Tenn. 1933), involving a change of duties under an employment contract, the parties were held to have modified the employment agreement resulting in no breach. In *Balderacchie v. Ruth*, 256 S.W.2d 390 (Tenn. App. 1953), the Court held that modification of an existing contract cannot be accomplished by the unilateral action of one of the parties. Rather,

4

there must be the same mutuality of assent and meeting of minds as required to make a contract, and new negotiations cannot affect a completed contract unless they result in a new agreement. Moreover, a modification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed. *Id.*

The reassignment of plaintiff to a job "five levels" lower than the job for which he was hired without more, would constitute a breach of the employment contract. Plaintiff was hired for a specific position of Special Assistant to the President, and his duties were described in the employment agreement as being comparable to that of senior management. While his salary remained the same, his duties were significantly diminished with his reassignment to a production job, and it has been held that such a demotion can be characterized as a discharge of the employee. *See* 30 C.J.S. Employer-Employee Relationship §52 (1992). The defendant has the burden of showing the modification of the contract by mutual assent or of establishing facts either constituting an accord or forming the basis of an estoppel. *Id.*

A contract for a definite term may not be terminated before the end of the term except for cause or by mutual agreement, unless the right to do so is reserved in the contract. 30 C.J.S. Employer-Employee Relationship §38. An employer has a right to discharge an employee at any time for just cause. The fact that the employer bears with the incompetency or irregularities of such employee for a time does not estop the employer from discharging the employee for such incompetency if it continues. *Little v. Federal Container Corp.*, 452 S.W.2d 875 (Tenn. App. 1969), *citing Glasgow v. Hood*, 57 S.W. 162 (Tenn.Chan.App. 1900) and *Jackson v. Texas Co.*, 10 Tenn.App. 235 (Tenn.App. 1929).

5

The Trial Judge held that plaintiff was fired for good cause, and there was no genuine issue of material fact as to the cause of termination. Good cause for discharge is found when the employee acts in a way that tends to injure his employer's business, interests, or reputation. 30 C.J.S. Employer-Employee Relationship §60. Whether good cause exists to terminate an employment contract is a determination made on a case-by-case basis, and exists only where the discharge is "objectively reasonable." *Video Catalog Channel, Inc. v. Blackwelder*, 1997 WL 581120 (Tenn.App. 1997) *citing* 30 C.J.S. Employer-Employee Relationship §60 (1992).

The Trial Judge relied heavily on an admission by the plaintiff that he was fired for cause. When asked why he was terminated from the job at Morrill Motors, plaintiff responded "for cause." However, this statement is not dispositive. Plaintiff could have merely been repeating the reason he was given for his termination. This may evince the fact that plaintiff knew the company was discharging him for cause and not for some other reason. Nonetheless, the stated reason for termination and the actual reason for termination may not coincide.

There are disputed issues of material fact as to the true cause of plaintiff's termination. On the one hand, plaintiff's position was eliminated in the restructuring of the company, and on the other hand there is evidence that plaintiff's job performance was not acceptable to the defendant.

Section 5 of the Employment Agreement states that "for good and sufficient cause, Employer may terminate this Agreement at any time **upon giving written notice** to the employee **specifying the reasons for such termination**." (Emphasis added). Plaintiff contends there is a dispute as to whether he received adequate written notice for the reasons for his termination.

Defendant points to three written documents as evidence of adequate notice of the termination and the reasons therefor. First, defendant points to a memo

dated May 9, 1997, reprimanding plaintiff's job performance. Next, defendant relies on a hand-written copy of the minutes of the August 18, 1997 meeting, that was furnished to plaintiff. Defendant states that it was in that meeting that plaintiff was terminated, and the notes contain notice, in writing, of plaintiff's deficiencies. At the time plaintiff was advised that "he was simply not contributing to the company, and he had been moved around and his peers are giving negative feedback about him." Plaintiff counters that in the meeting "there was no discussion of termination for cause." However, the notes from the meeting indicate that plaintiff was being terminated from his position. The third written notice to plaintiff was the separation notice completed on September 8, 1997. This stated that plaintiff was discharged because "he engaged in conduct and activities which are a material breach of his obligations under his employment agreement."

Plaintiff relies upon the deposition of Farnor to support his position that he was not given adequate notice of his termination. Farnor was asked if he had, at any time, given plaintiff "written notice specifying the reasons for his termination", and Farnor responded that he did not. Farnor was then asked if any other written reprimands in plaintiff's file specified a reason for termination, to which Farnor again replied "no." Farnor further stated that he had no knowledge of anyone else in the company giving plaintiff anything in writing specifying the reasons for termination.

There is a genuine issue of fact as to whether any of the written documents cited by the defendant satisfy the notice requirement. While defendant argues that it did satisfy this requirement, the Chairman of defendant's Board of Directors admits that he never gave plaintiff written notice of the reasons for his termination, nor knew of anyone else in the company providing such notice.

On this issue, an employee who is summarily discharged with less notice than specified under the contract may recover compensation for the notice period only,

and not for the balance of the contract period. *See* 27 Am.Jur.2d, *Employment Relationship* §43 (1996).

There are disputed issues of material fact to be resolved, and we therefore vacate the summary judgment and remand for trial on these issues.

We vacate the summary judgment and remand with cost of the appeal assessed to the defendant.

\_\_\_\_

_____
Herschel P. Franks, J.

CONCUR:

_____
Charles D. Susano, Jr., J.

_____
D. Michael Swiney, J.